IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| PROPERTY RIGHTS LAW GROUP, P.C., | ) ) ) | CIVIL NO. 13-00273 SOM-RLP |
| Plaintiff, | ) ) ) | ORDER DENYING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY |
| vs. | ) ) | INJUNCTION IN LIGHT OF PARTIES' AGREEMENT |
| SANDRA D. LYNCH; JOHN KANG, alias Lee Miller; and KEALA RODENHURST JAMES, | ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER DENYING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION IN LIGHT OF PARTIES' AGREEMENT**

**I.     INTRODUCTION.**

On May 30, 2013, Plaintiff Property Rights Law Group ("PRL") filed a Motion for Temporary Restraining Order and Preliminary Injunction ("Motion"). ECF No. 4. PRL's Motion seeks to "preserve the status quo by preventing the Defendants from further breaching the terms of Defendant Lynch's Illinois employment contract with PRL Group; from violating the Illinois Trade Secret Act ("ITSA"), 765 ILCS 1065/1 et seq.; and from violating the Computer Fraud and Abuse Act, 18 U.S.C. § 1030." Motion at 1-2. At the hearing on the Motion, it became clear that the parties were in agreement with respect to the relief sought by the Motion. PRL's Motion is therefore denied as moot, and this order memorializes the parties' agreement.

**II.     MOTION FOR TEMPORARY RESTRAINING ORDER.**

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. See G. v. State of Haw., Dep't of Human Servs., 2009 WL 2877597 (D. Haw. Sept. 4, 2009); Schoenlein v. Halawa Corr. Facility, 2008 WL 2437744 (D. Haw. June 13, 2008).

The Supreme Court has cautioned that a "preliminary injunction is an extraordinary and drastic remedy never awarded as of right." Winter v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 376 (2008) (citing Munaf v. Geren, 128 S. Ct. 2207, 2219 (2008)). Courts balance the competing claims of injury and consider the effect on each party of granting or denying the injunction. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter, 129 S. Ct. at 374; accord Sierra Forest Legacy v. Rey, 577 F.3d 1015, 1021 (9th Cir. 2009) ("Under Winter, plaintiffs seeking a preliminary injunction must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest.").

**III.     DISCUSSION.**

PRL is a law firm based in Illinois that specializes in representing distressed borrowers in numerous jurisdictions. PRL's Motion alleges that Defendant Sandra D. Lynch, an attorney in Hawaii, was terminated by PRL but "kept electronic files of the clients who were staying with her" and "refused to return any case files or other documents to PRL." Motion at 6. PRL says that Lynch "is keeping the clients' files in her home and is refusing to return them to PRL." Id. at 8. PRL asserts that Lynch's failure to give PRL files and written reports "seriously and materially adversely affects PRL Group's representation of their clients." Id. at 11.

PRL says that Lynch and Defendant Keala Rodenhurst James are in material breach of their employment contracts with PRL. Id. PRL claims that, after receiving a "cease and desist letter" from PRL, Lynch "admitt[ed] that the Defendants did retain client files and refused to return any files to PRL Group." Id. at 12. In addition, PRL claims:

> the Defendants responded by publishing on the
> Facebook page of John Kang (alias Lee Miller)
> false accusations that PRL Group is engaging
> in criminal activity with regard to its IOLTA
> account, that it was not licensed to do
> business in Hawaii, and that it is
> professionally incompetent.

Id.

PRL further asserts:

> On Monday, May 27, 2013, the Defendants (using a false name) followed up by causing to be published on the internet additional false accusations that PRL Group is engaging in criminal activity, that it is not licensed to do business in Hawaii, and that it is professionally incompetent.

Id.  PRL says that these actions have resulted in PRL's loss of 27 clients to Defendants' new law firm.  Id. at 12-13.  PRL further complains that Defendants "are trying to build a new business based on nothing more than the client list of PRL Group" and that, "until the disposition fo this matter, PRL Group is absolutely helpless to prevent her from poaching its clients." Id. at 13.  PRL says its Motion "seeks to protect . . . its interests in its clients, its confidential information, its files, and its employees."  Id.

Defendants dispute PRL's allegations.  Lynch says she resigned from PRL.  Lynch Decl. ¶ 64, ECF No. 18-1.  Lynch also says that, after her separation from PRL, she "would not return the files [she] had to anyone but the clients, per the ODC's [Office of Disciplinary Counsel's] advice."  Id. ¶ 70.  Lynch says that, in any event, "it didn't matter about any paper files, because the firm maintained everything on shared folders since the client files were all scanned and uploaded" to a shared PRL site to which she no longer had access.  Id.  At the hearing on the Motion, Lynch stated that she no longer had hard copy files belonging to PRL and had already notified PRL of what had been

turned over to clients. She also said that she had not electronically posted the derogatory comments PRL was complaining about.

For his part, Defendant Lee Miller argues that he has no knowledge of PRL's clients, and that PRL "has failed to offer any factual support or evidence, of any kind or nature whatsoever" for its allegations. Miller Opp'n at 5-6, ECF No. 15. At the hearing on the Motion, Miller stated that his Facebook page appeared to have been "hacked" and that he had not himself posted derogatory comments about PRL.

In its Reply brief, PRL asserts that Miller and James are now employed by Lynch and that Lynch is "organizing to compete with PRL." Reply at ¶ 1. PRL repeats its assertion that, "In retaliation for PRL Group's discharge of Defendant Lynch, and in an attempt to drive PRL Group out of business to facilitate taking its remaining clients, the Defendants have engaged in a campaign of slander on the internet and are using the stolen clients' credit card information to drain PRL Group's bank accounts." Id. ¶ 3. PRL further notes that Defendants Miller and Lynch's Oppositions "do not really deny what they did." Id. ¶ 6.

PRL argues that Defendant James, Lynch's employee, published on the internet two additional accusations that PRL is engaging in criminal activity and that it is professionally

5

incompetent.  Id. at 10-11; see also Ex. M, N.  PRL also asserts that Defendants "figure[d] out how to drain all funds out of PRL Group's operating account at BMO-Harris Bank in Chicago, using the credit cards of the clients that Defendants stole from PRL Groups.  And Defendants actually do this."  Reply at 11; see also Ex. S.  Finally, PRL complains that three of four statements allegedly posted by Defendants accusing PRL of "criminal activity and professional incompetence" are still published daily.  Reply at 11; see also Exs. K, M, and N.

At the hearing, the court sought clarification from PRL regarding what relief it sought from each Defendant.  As to Lynch, PRL represented that it wanted Lynch: (1) to send and/or resend all paper files in her possession relating to PRL's current clients; (2) to refrain from deleting anything relating to PRL from her computer(s); (3) to contact the "Ripoff Report" website and ask that the website remove any reports it believed were based on Lynch's representations regarding PRL; and (4) to refrain from contacting PRL's clients or otherwise soliciting them or interfering with PRL's business.  Lynch, without admitting to any of PRL's allegations, agreed to all of PRL's requests.

As to Miller, PRL wanted Miller: (1) to remove derogatory statements about PRL from internet or social media sites; (2) to refrain from deleting anything relating to PRL from

his computer(s); and (3) to return any of PRL's physical materials that he might have.  Without admitting to any of PRL's allegations, Miller agreed to the first two matters and said he had no physical materials.

PRL's requested relief of James was the same as its requested relief of Miller.  James agreed to PRL's first two requests, but indicated that she did have numerous original PRL files in her possession.  James said that, based on Lynch's advice, James was currently storing them rather than returning them to PRL.  James agreed to provide PRL with a complete inventory of the documents in her possession and promised not to destroy any of PRL's documents, and PRL agreed that this resolution was satisfactory for the purposes of its Motion.

Given the parties' representations and agreements at the hearing, PRL's Motion is denied as moot.  The agreement will remain in effect until the earliest of (a) a court order relating to the subjects of the agreement, (b) a subsequent agreement by the parties, or (c) the conclusion of the case.

**IV.     CONCLUSION.**

PRL's request for a temporary restraining order and preliminary injunction is denied as moot in light of the agreements memorialized in this order.

7

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 19, 2013.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

Property Rights Law Group v. Sandra Lynch, et al.; Civil No. 13-00273 SOM/RLP; ORDER DENYING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION IN LIGHT OF PARTIES' AGREEMENT