IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PROPERTY RIGHTS LAW GROUP, P.C., an Illinois Professional Corporation,<br><br>        Plaintiffs,<br><br>  vs.<br><br>SANDRA D. LYNCH, JOHN KANG, alias Lee Miller; and KEALA RODENHURST JAMES,<br><br>        Defendants.<br>_____ | Civ. No. 13-00273 SOM/RLP<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS KEALA RODENHURST JAMES'S AND LEE MILLER'S MOTION TO DISMISS |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS KEALA RODENHURST JAMES AND
LEE MILLER'S MOTION TO DISMISS**

Currently before the court is Defendant Keala Rodenhurst James and Lee Miller's motion to dismiss Plaintiff Property Rights Law Group's Complaint ("Motion"). The court grants the Motion with respect to the breach of contract claim and part of the statutory trade secrets claim. In all other respects, the Motion is denied.

**I.      BACKGROUND.**

Property Rights Law Group ("PRLG") says that it employed attorney Sandra Lynch from May 1, 2012, through April 24, 2013, to work on PRLG's cases in Illinois and Hawaii. Compl. ¶ 3. PRLG asserts that "Defendant John Kang, alias Lee Miller," as Lynch's "employee and business partner," as well as her agent, secretly worked with Lynch in violation of Lynch's employment

agreement (the "Agreement") with PRLG.  Id. ¶ 4.  In addition, PRLG asserts that "Defendant Keala Rodenhurst James is an employee of Defendant Lynch and her agent, and a former employee of the Plaintiff.  She conspired with Defendant Lynch against their employer while both were employees."  Id. ¶ 5.

PRLG alleges that James, Miller, and Lynch "conspired to breach the terms of Defendant Lynch's Agreement with PRL Group; to violate the Illinois Trade Secret Act; to violate the Computer Fraud and Abuse Act; to slander Mrs. Lynch's and Mrs. James's employer publically and with clients and to interfere with their employer's prospective economic advantage."  Id. ¶ 1.  Before the court is James and Miller's Motion.  While Lynch is appearing as counsel for James and Miller, Lynch is not presenting any motion on her own behalf at this time.

At the hearing, the parties disagreed over whether it was appropriate to apply Hawaii law or Illinois law with respect to Counts I, IV, and V.  James and Miller contend that Hawaii law applies.  Even accepting that argument, the court denies the motion with respect to those claims, without deciding the issue of choice of law.

**II.	STANDARD OF REVIEW.**

"[T]o survive a Rule 12(b)(6) motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the

allegations in the complaint are true even if doubtful in fact." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted); accord Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. The complaint must "state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 677.

**III.    ANALYSIS.**

    **A.    Count I: Breach of Contract.**

James and Miller say that Count I is deficient because "Plaintiff merely alleges that Defendant James 'worked for' PRL Group in Hawaii." Motion at 9. Defendants also say that "the complaint makes a naked allegation that 'John Kang' is an 'alias' for 'Lee Miller' without any context." Id. Finally, Defendants

3

attach the Agreement between Lynch and PRLG and argue that "[n]othing contained in the Agreement indicates that a previous business relationship between Ms. Lynch and any party constitutes a violation of the Agreement." Id.

To prevail on a claim for breach of contract, a party must prove: "(1) the contract at issue; (2) the parties to the contract; (3) whether Plaintiff performed under the contract; (4) the particular provision of the contract allegedly violated by Defendants; and (5) when and how Defendants allegedly breached the contract." Evergreen Eng'g, Inc. v. Green Energy Team LLC, 884 F. Supp. 2d 1049, 1059-60 (D. Haw. 2012).

Count I is not adequately supported by factual allegations that support a breach of contract claim against James and Miller. PRLG complains that James and Miller's "actions in their pre-termination solicitation of PRL Group's clients, Defendants Lynch's and James's manner of leaving PRL Group, and their wrongful down-loading and use of confidential information all constitute clear breaches of the terms of the Agreement and of the fiduciary relationship between employer and employees." Compl. ¶ 34.

At the hearing, PRLG admitted that the Agreement in issue was only between Lynch and PRLG. PRLG argued it was nonetheless entitled to sue James and Miller for breach of contract under either a principal/agent relationship or an

implied contract theory. No agency relationship is pled. The only reference to Lynch's alleged agents does not speak to whether James or Miller is or was Lynch's agent. Instead, that reference (in paragraph 39 of the Complaint) is part of the prayer for injunctive relief and states that such relief is sought against: "Defendant Lynch, her agents, servants, employees, officers, attorneys, successors and assigns, and all persons, firms, and corporations acting in connection or participation with her or on her behalf . . . ." Compl. ¶ 39(c)(3). The term "agents" in the quoted language in no way makes it clear that any Defendant is an alleged agent of a co-Defendant.

Nor is an implied contract sufficiently pled. The terms of and parties to any implied contract are not described at all.

To the extent Count I is intended to be a breach of fiduciary duty claim notwithstanding its heading, the alleged duty is not identified at all.

Under these circumstances, Count I is dismissed as to James and Miller.

**B.   Count II: Illinois Trade Secrets Act.**

Count II asserts violations of the Illinois Trade Secrets Act ("ITSA"). James and Miller claim that, while "it is unclear exactly what Defendants are alleged to have done and

"what trade secrets PRLG claims to have," it is impossible for Defendants to have violated ITSA because "any information PRLG provided to Ms. Lynch or Ms. James (if any) is not and has never been sufficiently secret to satisfy the statute)." Motion at 19. In particular, responding to allegations that they "downloaded" PRLG's documents, James and Miller say that "there is no factual basis to conclude that any of the alleged 'documents' 'downloaded' contained trade secrets, especially since the allegations concern a law firm." Id. at 18.  James and Miller do not show on this Motion that a law firm cannot have trade secrets, or that documents with trade secrets could not have been downloaded.  Instead, they put competing allegations before the court that do not, without more, justify dismissal of Count II.

To establish trade secret misappropriation under the ITSA, a claimant must show that:  "(1) a trade secret existed; (2) the secret was misappropriated through improper acquisition, disclosure, or use; and (3) the owner of the trade secret was damaged by the misappropriation." Parus Holdings, Inc. v. Banner & Witcoff, Ltd., 585 F. Supp. 2d 995, 1005 (N.D. Ill. 2008).  The ITSA defines a trade secret as: "information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers . . . ."  765 ILCS 1064/2(d).  "ITSA plaintiffs are

not required to plead highly specific facts on improper trade secret use, because such facts will often not be available before discovery." Motorola, Inc. v. Lemoko Corp., 609 F. Supp. 2d 760, 770 (N.D. Ill. 2009).

PRLG's Complaint says that "Defendants' actions in downloading and retaining PRL Group's clients list, forensic research, draft pleadings, research library, and strategic documents" constitute a violation of ITSA. Compl. ¶ 42. James and Miller argue in their Motion that the ITSA refers to a "list of actual or potential customers" as a trade secret, but that, as a law firm, PRLG did not have "customers." Motion at 19. This court is not persuaded. Nothing about the word "customers" excludes a lawyer's clients, or, for that matter, a piano teacher's students. One does not need to call patrons "customers" to fall within the ITSA. Moreover, PRLG articulates numerous injuries, so that even if a law firm's list of clients is not covered by the ITSA, that would not defeat Count II in its entirety.

### C. Count III: Computer Fraud and Abuse Act.

Count III asserts a violation of the Computer Fraud and Abuse Act ("CFAA"). James and Miller argue that Count III is deficient because the CFAA prohibits the intentional accessing of a computer without authorization, and "[t]here is no evidence that any 'computer' was accessed. Instead, any files from clients

were maintained on a cloud." Motion at 21-22. According to James and Miller, "no stand-alone computer . . . was breached" and "the use of 'mapping' to a drive is no more than a shortcut to use of a shared folder or 'cloud' platform." Id. at 21.

The CFAA creates a private right of action for "[a]ny person who suffers damage or loss" when an individual "intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage." See 18 U.S.C. § 1030(g), 1030(a)(5)(B). The CFAA provides:

> (a) Whoever –
> 
> . . . .
> 
> (2) intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . .
> 
>> (C) information from any protected computer
> 
> . . . .
> 
> (4) knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value . . . ;
> 
> (5) . . . .
> 
>> (B) intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage; . . . .
> 
> . . . .
> 
> shall be punished . . . .

18 U.S.C. § 1030.

PRLG cites to §§ 1030(a)(2),(a)(4), and (a)(5). Violations of subsections (a)(2) and (a)(5) do not need to be pled with particularity. <u>Motorola, Inc. v. Lemko Corp.</u>, 690 F. Supp. 2d 760, 765 (N.D. Ill. 2009). "By contrast, section 1030(a)(4) is violated only if a defendant acts 'with intent to defraud' and her conduct 'furthers the intended fraud.'" <u>Id.</u> (quoting § 1030(a)(4)). An intent to defraud need not be pled with particularity, but "Rule 9(b)'s requirement that '[i]n alleging fraud . . ., a party must state with particularity the circumstances constituting fraud,' . . . quite plainly applies to section 1030(a)(4)'s requirement that the defendant's acts further the intended fraud." <u>Id.</u> (internal citations omitted).

It is not entirely clear which portions of the statute PRLG is relying on for the various portions of its CFAA claim. To the extent PRLG is relying on subsections (a)(2) and (a)(5), the Complaint passes muster at this stage in the proceedings. However, PRLG does not sufficiently allege circumstances constituting fraud for purposes of subsection (a)(4), and any portion of Count III brought under that portion fo the CFAA is dismissed.

### D. **Count IV: Defamation**.

Count IV states a claim for defamation. James and Miller argue that Count IV is deficient because "Plaintiff can

9

provide no evidence that any of the documents it alleges are defamatory were read by anyone, believed by anyone, or known to be published at all." Id. at 25-26.

To sustain a claim for defamation, a claimant must show: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher [actual malice where the plaintiff is a public figure]; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." Gonsalves v. Nissan Motor Corp. in Hawaii, Ltd., 100 Haw. 149, 171, 58 P.3d 1196, 1218 (2002).

PRLG attaches to the Complaint copies of the allegedly defamatory statements, which appear to have been posted on the internet. At this stage of the litigation, the court allows Count IV to proceed.

**E.   Count V: Tortious Interference.**

Count V asserts a claim for tortious interference with prospective business advantage. James and Miller argue that "Plaintiff has not properly alleged elements of the tort, nor provided any factual allegations sufficient to support" a claim for tortious interference with prospective business advantage. Motion at 18.

The elements this claim are:

>    (1) the existence of a valid business relationship or a prospective advantage or expectancy sufficiently definite, specific, and capable of acceptance in the sense that there is a reasonable probability of it maturing into a future economic benefit to the plaintiff; (2) knowledge of the relationship, advantage, or expectancy by the defendant; (3) a purposeful intent to interfere with the relationship, advantage, or expectancy; (4) legal causation between the act of interference and the impairment of the relationship, advantage, or expectancy; and (5) actual damages.

Robert's Hawaii School Bus, Inc. v. Laupahoehoe Trans. Co., 91 Haw. 224, 257, 982 P.2d 853,888 (1999).  The court does not identify any deficiency in the factual allegations of Count V justifying dismissal.

**IV. CONCLUSION.**

The court dismisses Count I and the portion of Count III relating to 18 U.S.C. § 1030(a)(4).  The remaining portions of Count III, as well as Counts II, IV, and V, remain for adjudication.

     IT IS SO ORDERED.

     DATED: Honolulu, Hawaii, September 6, 2013.



          /s/ Susan Oki Mollway
          Susan Oki Mollway
          Chief United States District Judge

Property Rights Law Group, P.C. v. Sandra Lynch, et al., Civ no. 13-00273 SOM/RLP, ORDER GRANTING IN PART AND DENYING IN PART

DEFENDANTS KEALA RODENHURST JAMES AND LEE MILLER'S MOTION TO DISMISS